UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

**PAUL HSU,**

Plaintiff,

– against –

**COMMISSIONER OF SOCIAL SECURITY,**

Defendant.

**MEMORANDUM DECISION AND ORDER**

25-CV-3226 (AMD)

---

**CATHY HUANG,**

Plaintiff,

– against –

**COMMISSIONER OF SOCIAL SECURITY,**

Defendant.

25-CV-3227 (AMD)

---

**ANN M. DONNELLY**, United States District Judge:

Before the Court are the parties' motions for judgment on the pleadings. (*Hsu v. Comm'r*, No. 25-CV-3226, ECF Nos. 18 (Commissioner's Motion), 32 (Plaintiff's Motion); *Huang v. Comm'r*, No. 25-CV-3227, ECF No. 29 (Plaintiff's Motion).) The *pro se* plaintiffs appeal the Social Security Commissioner's dismissal of their claims; the Commissioner moves to affirm the Commissioner's decisions. As explained below, the Court grants the Commissioner's motion in part and denies it in part, grants the plaintiffs' motions in part and denies them in part, and remands the case.

## BACKGROUND[1, 2]

In 2011, the plaintiffs applied for and began receiving Social Security benefits as a married couple household. (ECF No. 1 ¶ 4.) In 2015, the couple separated and Huang moved, but they continued to receive benefits as a married couple household. (*Id.* ¶ 5.) On December 6, 2018, a Social Security Administration ("SSA") representative conducted a regular disability redetermination interview with Hsu. (*Id.* ¶ 6.) The interviewer made the following notations: "As per prior RPOC SSI couple apparently split back in 2015 but record was not terminated yet," and "Record should be split as soon spouse (Huang) shows up at SSA office." (*Id.*) On December 13, 2018, the SSA notified Hsu that it had overpaid him $4,186.92 in benefits from March 2016 through December 2018 because the plaintiff was receiving "in-kind support and maintenance." (ECF No. 6, Administrative Transcript ("R.") 4.) The SSA terminated Hsu's benefits in January 2019 and terminated Huang's benefits in April 2019. (Huang Action, ECF No. 13, Administrative Transcript ("Huang R.") 18–19.) Hsu filed a request for reconsideration on December 30, 2018, which the SSA denied on January 9, 2019. (R. 4.) Huang filed requests for reconsideration on January 17 and March 18, 2019, which the SSA denied on April 11, 2019. (Huang R. 328, 343.) The plaintiffs filed "about 10" more requests for reconsideration, which were loaded into SSA systems on April 19, 2019 and which the SSA construed as one request for

[1] The facts are based on the allegations in two complaints — *Hsu v. Commissioner*, No. 25-CV-3226 ("Hsu Action"), ECF No. 1, and *Huang v. Commissioner*, No. 25-CV-3227 ("Huang Action"), ECF No. 1 — and from documents in the administrative record (Hsu Action, ECF No. 6; Huang Action, ECF No. 13), of which the Court takes judicial notice. *See Combier-Kapel v. Biegelson*, 242 F. App'x 714, 715 (2d Cir. 2007) (district court did not err in considering documents in the administrative record, "since such documents were subject to judicial notice and were integral to the complaint"). The Court assumes the plaintiffs' allegations to be true for purposes of this motion. *See Montgomery v. Holland*, 408 F. Supp. 3d 353, 358 (S.D.N.Y. 2019), *aff'd sub nom. Montgomery v. NBC Television*, 833 F. App'x 361 (2d Cir. 2020).

[2] Unless otherwise specified, citations are to the record in the Hsu Action. Citations to the Huang Action are specified as such.

a hearing. (R. 98 n.1; *see also* Huang R. 339.) The plaintiffs complained that SSA employees falsified evidence that the SSA used to terminate their benefits. (*See, e.g.*, ECF No. 1 at 7.)[3]

On May 20, 2019, the plaintiffs submitted a "program discrimination complaint form" to the SSA alleging that the SSA's New York City employees discriminated and retaliated against the plaintiffs by falsifying information and tampering with records relating to their disability redetermination, which led to the termination of their Social Security benefits. (Huang R. 124–34.)

On June 9, 2021, Hsu appeared at a telephone hearing before ALJ Alan Berkowitz on behalf of himself and Huang. (ECF No. 1 at 10; Huang R. 354.) On July 26, 2021, the ALJ issued a decision finding that the plaintiffs had been overpaid benefits in the amount of $6,462.59 during the relevant period. (R. 109.) The ALJ determined that the plaintiffs held themselves out as separated and living in separate residences, resulting in higher SSI benefits than they were entitled to as a married couple, and rented apartments from their son at below-market rates, which is considered "in-kind support" and income over the amount allowed for SSI benefits. (*Id.*)

On September 25, 2021, the plaintiffs appealed the ALJ's decision to the Appeals Council. (ECF No. 1 ¶ 20.) On January 20, 2022, they submitted an "official misconduct and discrimination complaint" in which they claimed that the ALJ discriminated against them and relied on fabricated evidence about their separation, and the extent to which they were entitled to individual or married household benefits. (*See* R. 233–74.) On February 8, 2022, the SSA

[3] It is not clear from the record or the complaint when the plaintiffs filed some of the complaints, or when and to what extent the SSA responded to each. Nor does the record include the results of any investigations.

responded that it would investigate the plaintiffs' allegations but could not alter the ALJ's decision or change the outcome of the plaintiffs' case. (R. 275.)

On May 18, 2022, the Appeals Council remanded the plaintiffs' cases. With respect to Huang, the Appeals Council directed the ALJ to "[c]onsider whether [Huang]'s Supplemental Security Income payments should have been stopped beginning April 2019 and whether the claimant was ineligible for payments due to her receipt of in-kind support and maintenance." (Huang R. 19.) The Appeals Council directed the ALJ to "offer [Huang] an opportunity for a hearing, address the evidence which was submitted with the request for review, take any further action needed to complete the administrative record, and issue a new decision." (*Id.*) As for Hsu, the Appeals Council determined that the ALJ did not sufficiently explain the difference in the amount of overpayment in the notice to the plaintiffs — $4,186.92 — and the overpayment amount determined by the ALJ — $6,462.59. (R. 4–5.) The Appeals Council directed the ALJ to "[f]urther evaluate the amount of the overpayment and the overpayment period at issue and provide an explanation with references to the record for the cause or causes of that overpayment" and to ensure that the plaintiffs were advised about their right to representation on remand. (R. 5.)

A hearing pursuant to the Appeals Council's remand order was initially scheduled for July 18, 2023, and notice was mailed to the plaintiffs on April 17, June 5, and June 27, 2023. (R. 154, 158, 159.) At the plaintiffs' request, the hearing was rescheduled. (Huang R. 277.) On December 27, 2023, the SSA notified the plaintiffs that the hearing would be held on February 29, 2024; the notice also included the time, and location of the hearing. (R. 140; Huang R. 266; ECF No. 1 ¶ 27.) The notice stated: "If you do not attend the hearing, I may dismiss your

request for hearing, without further notice, unless I find that you have a good reason for not attending." (R. 140; Huang R. 266.)

On February 26, 2024, the plaintiffs moved to recuse or disqualify ALJ Berkowitz, alleging 16 grounds for recusal and disqualification, including "violations of due process, multiple federal law[s], the ethical rules and the Act of ALJ that require[s] him to maintain impartiality and avoid any appearance of impropriety." (Huang R. 248–51.)

On February 29, 2024, ALJ Berkowitz held the hearing as scheduled, but the plaintiffs did not appear. (R. 93.) The ALJ issued an order to show cause why the request for a hearing should not be dismissed. (R. 93.) On March 7, 2024, the ALJ denied Hsu's motion to recuse or disqualify. (R. 117.) The ALJ saw "no basis" for recusing himself and was "in no way motivated by any prejudice towards" the plaintiffs. (R. 117.) On March 13, 2024, the SSA mailed the plaintiffs a notice to show cause for their failure to appear at the hearing. (R. 118–19.) The plaintiffs responded on March 18, 2024: "Please check the claimant submission 'Motion to Recuse or Disqualify OHO ALJ Alan B. Berkowitz,' which was faxed on Feb. 26, 2024 respectively to both OHO Chief Administrative Law Judge and OHO ALJ Alan B. Berkowitz at the fax No. (833) 359-0115." (R. 178.)

In an April 2, 2024 decision, the ALJ concluded that the plaintiffs had not shown good cause for their failure to appear at the hearing; accordingly, the ALJ dismissed the plaintiffs' request for a hearing. (R. 94, 98.) The ALJ did not address the evidence or the merits of the overpayment issue in that decision. (*See id.*) The plaintiffs requested review of the dismissal order on June 3, 2024. (R. 10–12.) The Appeals Council denied the request on April 4, 2025. (ECF No. 6 at 4.)

The plaintiffs filed this action on June 10, 2025, seeking judicial review of the SSA's dismissal of their claim. (ECF No. 1; Huang Action ECF No. 1.)[4] Both parties moved for judgment on the pleadings. (ECF Nos. 18, 32; Huang Action, ECF No. 29.)

## LEGAL STANDARD

### I. Standard on a Motion for Judgment on the Pleadings

The Court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In deciding a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), a district court must "employ the same standard applicable to Rule 12(b)(6) motions to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015). "Thus, a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant, and deny the motion unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nogbou v. Mayrose*, 400 F. App'x 617, 619 (2d Cir. 2010) (citations omitted).

"Complaints by *pro se* plaintiffs are to be examined with 'special solicitude,' and interpreted 'to raise the strongest arguments that they suggest.'" *Temple v. Hudson View Owners Corp.*, 222 F. Supp. 3d 318, 323 (S.D.N.Y. 2016) (quoting *Shibeshi v. City of N.Y.*, 475 F. App'x. 807, 808 (2d Cir. 2012) (summary order)).

[4] The plaintiffs raise due process claims, but do not explain how the defendant violated their due process rights. The Court does not consider the due process claims because it grants the motion for remand on other grounds.

## II. Standard for Reviewing the Commissioner's Procedural Dismissal

District courts review a procedural determination for "abuse of discretion as to the overall conclusion, and 'substantial evidence' 'as to any fact.'" *Smith v. Berryhill*, 587 U.S. 471, 487 n.19 (2019) (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citation omitted). "'[I]f substantial evidence supports the Commissioner's determination' to dismiss a request for a hearing, the 'court will review the agency's 'good cause' determination for abuse of discretion.'" *Williams v. Kijakazi*, No. 20-CV-5954, 2022 WL 428773, at *5 (S.D.N.Y. Jan. 31, 2022) (quoting *Hayward v. Comm'r of Soc. Sec.*, No. 18-CV-10402, 2021 WL 982296, at *3 (S.D.N.Y. Mar. 16, 2021)), *report and recommendation adopted sub nom. Williams v. Comm'r of Soc. Sec.*, No. 20-CV-5954, 2022 WL 428327 (S.D.N.Y. Feb. 11, 2022).

# DISCUSSION

## III. Regulatory Framework

"Under the SSA regulations, a claimant must complete a four-step administrative review process to obtain a judicially reviewable final decision." *Hayward*, 2021 WL 982296, at *3; *see also* 20 C.F.R. § 404.900(a) (setting forth administrative review process). The four-step process includes: (1) the agency's determination of the claimant's eligibility; (2) the claimant's request for reconsideration of the initial eligibility determination; (3) the claimant's request for a hearing before an ALJ; and (4) the claimant's request for Appeals Council review of the ALJ's decision. *Hayward*, 2021 WL 982296, at *3; *see also* 20 C.F.R. § 404.900(a)(1)–(4).

If the claimant does not appear at the hearing at step three, and the ALJ finds that good cause does not exist to excuse the absence, the ALJ may dismiss the request for a hearing. *See* 20 C.F.R. § 404.957(b)(1)(i). In determining whether good cause exists, the ALJ should

consider whether the claimant has "any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language)." *Id.* § 404.957(b)(2). If the claimant has completed all four steps, the Commissioner's decision is deemed a "final decision." *Id.* § 404.900(a)(5). If the decision is unfavorable, the claimant may seek review in federal court by filing an action within 60 days of receiving notice of the Appeals Council's action. *See id.* § 404.981.

## IV. Subject Matter Jurisdiction

The Court first considers whether it has subject matter jurisdiction. *See Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) ("It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress. If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*." (citation modified)); *see also* Fed. R. Civ. P. 12(h)(3).

Judicial review is available under 42 U.S.C. § 405(g) for "any final decision of the Commissioner of Social Security made after a hearing to which [the claimant] was a party." 42 U.S.C. § 405(g). Section 405(g) "contains two separate elements: first, a 'jurisdictional' element that claims be presented to the agency, and second, a 'waivable . . . requirement that the administrative remedies prescribed by the Secretary be exhausted.'" *Smith*, 587 U.S. at 475 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976)). "The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary." *Mathews*, 424 U.S. at 328; *see also Coe v. Saul*, No. 19-CV-10993, 2020 WL 6729169, at *7 (S.D.N.Y. Nov. 16, 2020) (explaining that, because the first element "is jurisdictional in nature, [it] cannot be waived" (citing *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012))). The second element, requiring

exhaustion of administrative remedies, can be waived by the Commissioner. *Coe*, 2020 WL 6729169, at *7 (citing *Smith*, 587 U.S. at 475–576).

District courts are divided as to whether dismissal based on the claimant's failure to appear constitutes a "final decision . . . made after a hearing." *See, e.g.*, *Louisiana S. v. Commissioner of Soc. Sec.*, No. 20-CV-130, 2021 WL 911691, at *3 (N.D.N.Y. Mar. 10, 2021). In *Smith*, the Supreme Court held that the SSA's procedural determination — dismissal of the plaintiff's untimely appeal of an ALJ's decision, which was made after a hearing on the merits — was "a final decision . . . made after a hearing" and therefore subject to review under Section 405(g). 587 U.S. at 480. It acknowledged, though, that "the Court's precedents make clear that an ALJ hearing is not an ironclad prerequisite for judicial review." *Id*. at 479–80. The jurisdictional prerequisite is that the "claim for benefits shall have been presented to the Secretary." *Mathews*, 424 U.S. at 328 (holding that judicial review was not precluded where claimant did not seek reconsideration of the initial determination but had "specifically presented the claim that his benefits should not be terminated"); *see also Louisiana S.*, 2021 WL 911691, at *3 (concluding that the plaintiff, who sought review of the ALJ's dismissal of her case without a hearing, had "presented her claim to the agency" by presenting the issue on which she sought judicial review to the Appeals Council).

The Court has jurisdiction to review the action. Although the plaintiffs did not have a hearing after the Appeals Council remanded their case, they presented their claims to the SSA, and the SSA appears to have made a claim-ending procedural determination, which satisfies Section 405(g)'s jurisdictional requirement. The SSA can waive the hearing requirement, which is what happened in this case.[5]

[5] The Commissioner did not invoke Section 405(g) as a bar to judicial review, and has thus waived the administrative exhaustion requirement. (*See* ECF No. 19 at 4 ("The dismissal of a claimant's request for

The plaintiffs' "entitlement to judicial review is confirmed by 'the strong presumption that Congress intends judicial review of administrative action.'" *Smith*, 587 U.S. at 483 (quoting *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986)). The Court does not presume that Section 405(g), a "claimant-protective statute," would leave claimants without recourse when the SSA dismisses their claims for purely procedural reasons. *See Smith*, 587 U.S. 471 at 483.

Moreover, the Court "may exercise mandamus jurisdiction under 28 U.S.C. § 1361" to "review a social security claim even though it has not been adjudicated after a hearing on the merits under 42 U.S.C. § 405(g)." *Moses v. Colvin*, No. 13-CV-2041, 2013 WL 5663071, at *3 (S.D.N.Y. Oct. 17, 2013) ("In order to qualify for mandamus relief, a plaintiff must demonstrate that (1) he has a right to have the act at issue performed, (2) the defendant is under a clear nondiscretionary duty to perform that act, and (3) the plaintiff has exhausted all other avenues of relief." (citing *City of New York v. Heckler,* 742 F.2d 729, 739 (2d Cir. 1984)), *report and recommendation adopted sub nom. Moses v. Comm'r of Soc. Sec.*, No. 13-CV-2041, 2013 WL 6049096 (S.D.N.Y. Nov. 15, 2013). Accordingly, the Court considers the merits of the parties' cross motions for judgment on the pleadings.

## V. The ALJ's Decision

### a. The ALJ's "Good Cause" Determination

An ALJ "may dismiss a request for a hearing" when:

> (i) Neither you nor the person you designate to act as your representative appears at the time and place set for the hearing and you have been notified before the time set for the hearing that your request for hearing may be dismissed without further notice if you did not appear at the time and place of hearing, and good cause has

---

Appeals Council review of an ALJ's decision is a final decision and subject to judicial review under § 405(g).")

> not been found by the administrative law judge for your failure to appear; or
>
> (ii) Neither you nor the person you designate to act as your representative appears at the time and place set for the hearing and within 10 days after the administrative law judge mails you a notice asking why you did not appear, you do not give a good reason for failure to appear.

20 C.F.R. § 404.957(b)(1); *see also* 20 C.F.R. § 416.1457(b)(1). "In determining good cause or good reason under this paragraph, [the ALJ] will consider any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language)" that the claimant may have. 20 C.F.R. § 404.957(b)(2); *see also* 20 C.F.R. § 404.1457(b)(2). Circumstances constituting "good cause" may include: "(1) improper notice of the hearing, (2) an unforeseeable event, and (3) withdrawal of representation without notice." *Miller v. Berryhill*, No. 17-CV-1734, 2018 WL 6381458, at *4 (D. Conn. Dec. 6, 2018), *aff'd sub nom. Miller v. Comm'r of Soc. Sec. Admin.*, 784 F. App'x 837 (2d Cir. 2019).

Substantial evidence supports the ALJ's determination that the plaintiffs did not provide good cause for failing to appear at the hearing. The plaintiffs admit they received notice of the February 29, 2024 hearing. (ECF No. 1 ¶ 27.) That notice explained that failure to appear at the hearing could result in dismissal of their request for a hearing. (*See* R. 140.) Nevertheless, they argue that their absence should be excused because their motion to recuse or disqualify ALJ Berkowitz was pending. (ECF No. 1 ¶ 31.) That claim is not persuasive. The plaintiffs knew when and where the hearing was going to take place, and do not claim that that some unforeseen event kept them from appearing. Under these circumstances, the ALJ's determination was supported by substantial evidence. Accordingly, he did not abuse his discretion in dismissing the plaintiffs' request for a hearing.

**b. Compliance with Remand Orders**

However, the ALJ did not comply fully with the Appeals Council's May 18, 2022 remand orders. The remand order on Hsu's appeal directed the ALJ to do two things:

- Further evaluate the amount of the overpayment and the overpayment period at issue and provide an explanation with references to the record for the cause or causes of that overpayment (20 CFR 416.437).

- If the claimant is unrepresented, ensure that the claimant is advised about the right to representation, is capable of making an informed choice about representation, and the procedures set forth in HALLEX I-2-6-52 B and I-2-1-80 are followed.

(R. 5.) The remand order on Huang's appeal directed the ALJ to:

- Consider whether the claimant's Supplemental Security Income payments should have been stopped beginning April 2019 and whether the claimant was ineligible for payments due to her receipt of in-kind support and maintenance (20 CFR 416.1102).

(Huang R. 19.) In addition, the orders provided: "In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, address the evidence which was submitted with the request for review, take any further action needed to complete the administrative record, and issue a new decision." (R. 6; Huang R. 19.) The Appeals Council directed the ALJ to review the evidence, develop the record if necessary, and issue a new decision on the merits — whether or not the plaintiffs accepted the "opportunity for a hearing." (R. 6; Huang R. 19.)

The ALJ found "that the claimant has not given a good reason for his failure to appear at the time and place of hearing;" "[a]ccordingly, the request for hearing dated April 19, 2019 is dismissed and the determination dated January 9, 2019 remains in effect." (R. 98; *see also* Huang R. 7.) But the ALJ did not address the evidence, consider whether the administrative record should be developed further, or "evaluate the amount of the overpayment and the

overpayment period at issue and provide an explanation with references to the record for the cause or causes of that overpayment." (*See* R. 5.) The ALJ dismissed the plaintiffs' claim on procedural grounds — because they did not come to the hearing — which did not comply with the Appeals Council's order. The proper procedure would have been to "determine that the plaintiff[s] constructively waived [their] right to appear and issue a decision." *Dority v. Comm'r of Soc. Sec.*, No. 14-CV-285, 2015 WL 5919947, at *4 (N.D.N.Y. Oct. 9, 2015). Nothing in the record before the Court suggests that the ALJ issued a separate decision on the merits.

Accordingly, the case is remanded for compliance with the Appeals Council's May 18, 2022 remand orders.

**CONCLUSION**

The Commissioner's motion for judgment on the pleadings (Hsu Action, ECF No. 18) is granted in part and denied in part, and the plaintiff's motions for judgment on the pleadings (Hsu Action, ECF No. 32; Huang Action, ECF No. 29) are granted in part and denied in part. The plaintiffs' request for remand is granted. The Clerk of the Court is respectfully directed to enter judgment accordingly and close the cases.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
August 27, 2026